IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL MORINVILLE,<br>3290 Ridge Road,<br>Highland, IN 46322,<br><br>and<br><br>GILBERT P. HYATT,<br>7335 Tara Avenue,<br>Las Vegas, NV 89117,<br><br>           Plaintiffs,<br><br>     v.<br><br>UNITED STATES PATENT AND<br>TRADEMARK OFFICE,<br>600 Dulany Street,<br>Alexandria, VA 22314,<br><br>           Defendant. | Civil Action No. 1:19-cv-01779<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT FOR MONEY DAMAGES AND DECLARATORY RELIEF

Plaintiffs Paul Morinville and Gilbert P. Hyatt, on behalf of themselves and all others similarly situated, for their Complaint against the United States Patent and Trademark Office ("PTO"), allege as follows:

### Nature of the Action

1.     In the mid-1990s, the PTO established a secret program called the "Sensitive Application Warning System," or "SAWS," under which it blocked issuance of patent applications identified as "sensitive" by its personnel. A SAWS flag served as a scarlet letter for patent applications, alerting PTO personnel that a flagged application was considered to be an abusive "submarine" application or otherwise objectionable. As a result, flagged applications were delayed and prejudiced in their prosecution, injuring their owners. Despite the prejudice and injury to patent applicants caused by SAWS flags, the PTO never disclosed

to applicants that their applications were flagged, much less the SAWS reports that provided the purported factual basis for flagging. Patent applicants were thereby denied the ability to challenge the flagging of their applications and the adverse consequences of the flagging, or even to dispute the factual basis for the PTO's determination to flag applications.

2.      The PTO's withholding of SAWS reports and SAWS flags from patent applicants whose applications were flagged under SAWS violates the Privacy Act. The Privacy Act requires agencies, including the PTO, to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). The PTO's failure to place SAWS reports and SAWS flags in patent application files denied applicants a fair chance to contest PTO's flagging decisions, as well as the numerous adverse consequences with respect to actions on their applications that flowed from the entry of a SAWS flag. Accordingly, this action seeks monetary relief, as authorized by the Privacy Act, and declaratory relief on behalf of the class of all patent applicants whose applications were flagged under SAWS.

## Parties

3.      Plaintiff Paul Morinville is an inventor who has obtained 9 issued patents. Mr. Morinville has had 26 patent applications pending before the PTO since February 2000.

4.      Plaintiff Gilbert P. Hyatt is an engineer, scientist, and inventor who has obtained more than 70 issued U.S. patents. Mr. Hyatt has had numerous patent applications pending before the PTO at all times from at least 1990 through the present.

5.      Defendant United States Patent and Trademark Office is the federal agency responsible for examining patent applications and for issuing U.S. patents. The PTO's headquarters is located in Alexandria, Virginia.

### Jurisdiction and Venue

6.     This action arises under the Privacy Act, 5 U.S.C. § 552a, and the Declaratory Judgment Act, 28 U.S.C. § 2201. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7.     Venue is proper in this judicial district pursuant to 5 U.S.C. § 552a(g)(5).

### Statutory Background

8.     The Privacy Act requires each agency that maintains a system of records to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination[.]" 5 U.S.C. § 552a(e)(5).

9.     Pursuant to the Privacy Act, each agency that maintains a system of records on individuals must "permit the individual to request amendment of a record pertaining to him." 5 U.S.C. § 552a(d)(2).

10.     The PTO is an "agency" under the Privacy Act. 5 U.S.C. § 552a(a)(1).

11.     Pursuant to the Privacy Act, "Patent Application Files" is a system of records maintained by the PTO. 78 Fed. Reg. 19,243 (Mar. 29, 2013).

12.     Individual patent application files are "records" under the Privacy Act. 5 U.S.C. § 552a(a)(5).

13.     Pursuant to the Patent Act, "[w]henever, on examination any claim for a patent is…object[ed to], the [PTO] shall notify the applicant thereof, stating the reasons for such…objection…together with such information…as may be useful in judging of the propriety of continuing the prosecution of his application." 35 U.S.C. § 132(a).

### Factual Allegations

14.     Beginning in or around 1994, the PTO operated a program it called the "Sensitive Application Warning System" or "SAWS."

15.     The existence and operation of SAWS was not disclosed to the public until approximately 2014.

3

16.     Under SAWS, PTO personnel were directed to flag "sensitive" applications through various tracking mechanisms, including databases maintained by PTO examination groups and the PTO's Patent Application Location and Monitoring ("PALM") database.

17.     Whether an application was "sensitive" was based on non-statutory criteria— that is, criteria other than those that determine patentability under the Patent Act.

18.     Instead, PTO personnel were directed to flag under SAWS applications "that, if issued, would potentially generate high publicity or would potentially have a strong impact in the patent community."

19.     For example, PTO personnel were directed to flag under SAWS "[a]pplications which have old effective filing dates (pre 6/8/1995, i.e. pre-GATT) and claims of broad scope (submarines)."

20.     "Submarine" is a pejorative term that refers to a patent application that has been purposefully delayed or manipulated by an applicant so as to emerge after the technology it covers is already in wide use.

21.     PTO personnel were also directed to flag applications "with pioneering scope," applications "dealing with inventions, which if issued would potentially generate extensive media coverage," applications involving "abortion," and applications "which have objectionable or derogatory subject matter in the specification and/or drawing(s)," among others.

22.     According to an internal PTO memorandum, "[f]lagging an identified SAWS application in PALM [ensures] that the case does not issue until the flag has been removed." In addition, the SAWS flag "will prevent a Notice of Allowance in the application from being mailed."

23.     The SAWS program was typically overseen in each PTO examination group by a SAWS Point of Contact ("POC"). The SAWS POC was responsible for flagging SAWS-designated applications in the PTO's tracking systems, typically at the direction of the Supervisory Patent Examiner ("SPE"), who had Signatory Authority to make such

substantive determinations on behalf of the agency, determinations that would prevent sending a Notice of Allowance or an issuance of a patent.

24.     In general, PTO patent examiners were directed to "report potential SAWS cases to their SPE," and, with the SPE's approval and direction, the SAWS POC would flag the application in the PTO's tracking systems.

25.     For periods of time, some PTO examination groups maintained their own lists of SAWS flagged applications. Others were flagged in PTO-wide tracking systems, such as PALM. Relevant PALM flags or grouping included "SAWS" and indications to "prevent issue," "prevent Notice of Allowance," or "prevent mailing."

26.     PTO personnel were directed to prepare reports ("SAWS reports") identifying the factual basis for flagging applications under SAWS, including an "Impact Statement." According to an internal PTO memorandum: "Such information may include, but is not limited to financially important subject matter (Is the stock of the invention's owner publicly traded? Have there been press releases about the invention?), politically charged subject matter, and subject matter which may raise legal or ethical objections." PTO personnel were directed to perform research, including Internet research, in preparing SAWS reports.

27.     A SAWS flag prevented issuance of a patent application, irrespective of whether it claimed subject matter satisfying the statutory criteria for patentability.

28.     Internal PTO memoranda structuring the SAWS program provided no process for removal of the SAWS flag other than a "screening mechanism to remove non-SAWS applications from their SAWS designation." In other words, once a flagged application passed the screening mechanism, there was no defined process to remove the flag, nor an identified PTO official who is authorized to do so.

29.     According to an internal PTO memorandum, "[a]pplications identified and verified as containing SAWS material are reported to the Group Directors for transmittal to the Office of the Deputy Commissioner."

30.     The PTO did not disclose the existence or operation of the SAWS program in the Manual of Patent Examining Procedures ("MPEP") of any other publication available to the public.

31.     The PTO did not disclose the existence or operation of the SAWS program to personnel of the Department of Commerce's Office of the Inspector General conducting audits and investigations regarding the PTO.

32.     Prior to 2015, the PTO did not disclose SAWS reports to patent applicants whose applications were flagged under SAWS.

33.     The PTO did not disclose to patent applicants that their applications were flagged under SAWS.

34.     SAWS materials, including SAWS flagging status and SAWS reports, were not placed in the patent application file accessible to applicants.

35.     A SAWS flag created a secret PTO "objection" to issuance. Therefore, its omission from the patent application file accessible to applicants precluded applicants from receiving notice of any "objection" as required by the Patent Act so that they may exercise their rights for timely "judging of the propriety of continuing the prosecution." 35 U.S.C. § 132(a).

36.     SAWS materials, including SAWS flagging status and SAWS reports, were disclosed to the PTO's Board of Patent Appeals and Interferences (subsequently reconstituted as the Patent Trial and Appeal Board and referred to here, in either incarnation, as the "Board") in administrative appeals involving flagged applications.

37.     The Board's Standard Operating Procedures for *ex parte* appeals contained a special "Review Process" for SAWS-flagged applications. In particular, this process expressly required "paying particular attention to the special [SAWS] issues raised by the [Technology Center]." The Procedures further specified that such issues would typically be discussed with the Chief Judge, who would consider SAWS issues in assigning the appeal to a Board panel.

38. The PTO did not disclose to patent applicants bringing Board appeals in applications flagged under SAWS that SAWS materials were secretly being disclosed to the Board.

39. A SAWS flag imposed substantial costs and burdens on a patent applicant.

40. As noted, a SAWS flag blocked an application from issuing, irrespective of the applicant's statutory entitlement to issuance of a patent, and SAWS flags thereby denied applicants their rights under the Patent Act.

41. SAWS flags subjected flagged applications to additional procedural burdens and delay of any possible issuance, imposing greater prosecution burdens and the costs of delay on applicants.

42. In these ways and others, SAWS flags adversely affected patent applicants whose applications were flagged.

43. In these ways and others, SAWS flags were themselves, and contributed to, determinations adverse to patent applicants whose applications were flagged, including determinations to subject those applications to procedures resulting in additional scrutiny beyond the typical patent-examination process.

44. Likewise, SAWS reports contributed to determinations adverse to patent applicants whose applications were flagged, including the SAWS flag itself and subsequent determinations influenced by the SAWS flag or report.

45. Because the SAWS program, SAWS flags, and SAWS reports were withheld from applicants whose applications were flagged, those applicants had no ability to challenge the flagging of their applications or the basis for such flagging.

46. The PTO's official policy was to maintain the secrecy of the SAWS program and to deny applicants access to SAWS-related information and materials. Accordingly, the PTO's omission of these SAWS-related materials from individual patent application files, and withholding of these materials from applicants, was intentional and willful.

47.     On information and belief, Mr. Morinville's applications are believed to have been flagged under SAWS because at least one of them had a PALM record indication of "allowance counted" but no related Notice of Allowance was sent. The examiner pointed out that the absence of the Notice of Allowance indicated the application had "entered a secondary review process," suggesting that the application was subject to a SAWS flag. Despite Mr. Morinville's petition for the issuance of a Notice of Allowance, the PTO refused to act on this application for 9 months.

48.     The PTO has not included SAWS flags or SAWS reports in any of Mr. Morinville's patent application files. In a response to Mr. Morinville's request under the Freedom of Information Act, the PTO refused to confirm or deny whether any of his applications were flagged under the SAWS. As a result, Mr. Morinville was not able to challenge the flagging of his applications or the basis for such flagging.

49.     Mr. Morinville's applications have been subject to extensive delays before the PTO and additional procedural burdens, causing him to bear expense and injury.

50.     The PTO informed Mr. Hyatt in a discovery response served on June 19, 2017, that "approximately five of Mr. Hyatt's patent applications were flagged in the SAWS program." This was the first notice that Mr. Hyatt received that any of his patent applications had been flagged under SAWS.

51.     Despite informing Mr. Hyatt that these applications have been flagged under SAWS, the PTO has not included SAWS flags or SAWS reports in any of his patent application files. As a result, Mr. Hyatt was not able to challenge the flagging of his applications or the basis for such flagging.

52.     Mr. Hyatt's applications have been subject to extensive delays before the PTO and additional procedural burdens, causing him to bear expense and injury.

## Class Allegations

53.     The named plaintiffs bring this suit both individually and on behalf of a proposed class of persons similarly situated pursuant to Federal Rule of Civil Procedure

23(b)(2) and (b)(3). The class consists of all patent applicants whose applications have been flagged under SAWS at any time. The named plaintiffs are members of the class they seek to represent.

54.     The class is so numerous that joinder of all members is impracticable, as required by Federal Rule of Civil Procedure 23(a)(1). Internal PTO records report that thousands of applications were flagged under SAWS. Moreover, because the PTO has disclosed only to Mr. Hyatt that several of his applications were flagged, and has not disclosed SAWS flags to other applicants, those applicants are unlikely to institute individual actions. The exact number and identity of all members of the class is unknown to the named plaintiffs, but that information is contained in the PTO's records.

55.     As required by Federal Rule of Civil Procedure 23(a)(2), there are questions of fact and law common to all members of the class. These concern the operation of the SAWS program and the PTO's obligations under the Privacy Act with respect to SAWS-related records. Moreover, those common questions predominate over any questions affecting only individual class members. This class action seeks the minimum authorized statutory damages per violation, 5 U.S.C. § 552a(g)(4)(A), and so there are no individualized issues with respect to damages calculations for members who do not request exclusion to pursue greater actual damages.

56.     The claims of the named plaintiffs are typical of the claims of the class, as required by Federal Rule of Civil Procedure 23(a)(3). Their patent applications were flagged in the very same manner, pursuant to the same PTO program, as those of all class members. There are no conflicts between the interests of the named plaintiffs and the interests of the members of the class.

57.     The named plaintiffs and their counsel will fairly and adequately protect the interests of the class, as required by Federal Rule of Civil Procedure 23(a)(4). Each plaintiff seeks to vindicate the same rights under the Privacy Act, on the same factual and legal basis, as class members. The named plaintiffs' interests are not antagonistic to or in conflict with the

interests of any other member of the class. Moreover, the named plaintiffs have retained competent and experienced counsel to represent the class and class members therein.

58.     The requirements of Federal Rule of Civil Procedure 23(b)(2) are met in that the PTO has acted or refused to act on grounds that apply generally to the class, making final declaratory relief appropriate with respect to the class as a whole.

59.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation, as required by Federal Rule of Civil Procedure 23(b)(3). Individual joinder of all members of the class is impracticable. In addition, because the damages suffered by individual class members are relatively small in comparison to the expense and burden of prosecuting this litigation, class members are unlikely to be able to redress the wrongs done to them on an individual basis. That is particularly so in light of the PTO's failure to notify patent applicants of the flagging of their applications under SAWS, which means that any individual applicant who suspects that his or her applications were flagged under SAWS would have to bear the risk of paying to bring individual litigation only to suffer dismissal should it be determined that his or her application was not, in fact, flagged. Moreover, if class members were able individually to prosecute their own actions, it would be unduly burdensome on the courts to proceed with thousands of individual cases raising identical issues of fact and law. By contrast, the class action device presents far less risk and uncertainty for individual class members and provides the benefits of unitary and consistent adjudication, economies of scale, and comprehensive supervision by a single court.

<u>**Count 1: Failure To Maintain Records**</u>

60.     The above paragraphs are hereby incorporated by reference as if set forth fully herein.

61.     The Privacy Act authorizes a civil remedy whenever an agency "fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be

made on the basis of such record, and consequently a determination is made which is adverse to the individual." 5 U.S.C. § 552a(g)(1)(C).

62.     Determinations of patent applicants' rights under the Patent Act are made on the basis of their patent application files.

63.     The PTO omitted indications of SAWS flags and SAWS reports from patent application files of flagged applications.

64.     Because of those omissions, the PTO failed to maintain those patent application files with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in determinations relating to patent applicants' procedural and substantive rights under the Patent Act.

65.     Those omissions contributed to determinations by the PTO that were adverse to patent applicants whose applications were flagged under SAWS, including the SAWS flag itself and determinations affected by the SAWS flag.

66.     Those omissions therefore violate the Privacy Act, 5 U.S.C. § 552a(e)(5).

67.     Accordingly, the Plaintiffs and Class are entitled to relief under the Privacy Act.

**Count 2: Declaratory Relief Regarding Failure To Maintain Records**

68.     The above paragraphs are hereby incorporated by reference as if set forth fully herein.

69.     An actual controversy exists between the named plaintiffs, on behalf of themselves and the members of the class, and the PTO regarding its obligation under the Privacy Act to include SAWS-related materials in patent application files.

70.     The named plaintiffs, on behalf of themselves and the members of the class, are entitled to a declaration of rights under the Privacy Act and any further necessary or proper relief against the PTO pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

## Prayer for Relief

WHEREFORE, Plaintiffs respectfully ask that this Court

A.  Certify this case as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) and certify the class as alleged and defined herein;

B.  Grant declaratory relief in favor of the named plaintiffs and the class that the PTO's omission of SAWS materials from patent application files violates the Privacy Act;

C.  Award the named plaintiffs and members of the class statutory damages of $1,000 per violation of the Privacy Act pursuant to 5 U.S.C. § 552a(g)(4)(A);

D.  Award the named plaintiffs the cost of this litigation and reasonable attorney fees pursuant to 5 U.S.C. § 552a(g)(4)(B) and Federal Rule of Civil Procedure 23(h); and

E.  Grant such other and further relief as the Court may deem just and proper.

## Jury Trial Demand

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.


Dated: June 18, 2019                      Respectfully submitted,


                                          /s/ Andrew M. Grossman
                                          Andrew M. Grossman (D.C. Bar No. 985166)
                                          Mark W. DeLaquil (D.C. Bar No. 493545)
                                          BAKER & HOSTETLER LLP
                                          1050 Connecticut Ave., N.W.
                                          Suite 1100
                                          Washington, D.C. 20036
                                          (202) 861-1697
                                          agrossman@bakerlaw.com
                                          mdelaquil@bakerlaw.com